**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CAMPAIGN LEGAL CENTER<br>1101 14th Street NW, Suite 400<br>Washington, DC 20005,<br><br>        Plaintiff,<br><br>        v.<br><br>FEDERAL ELECTION COMMISSION<br>1050 First Street NE<br>Washington, DC 20463,<br><br>        Defendant. | Civil Action No. _____ |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiff Campaign Legal Center ("CLC") filed an administrative complaint with the Federal Election Commission ("FEC" or "Commission") on August 23, 2018, alleging that 45Committe, Inc. violated the Federal Election Campaign Act ("FECA") by failing to register as a political committee and failing to file reports disclosing its contributors, expenditures, and debts. 45Committee is a 501(c)(4) organization that spent over $22 million on independent expenditures and electioneering communications in 2016 in support of Donald Trump and in opposition to Hillary Clinton and Florida U.S. Senate candidate Patrick Murphy. Press reports reveal that 45Committee was formed precisely because certain large donors wished to avoid public disclosure of their financial support of then-candidate Trump.

Over 48% of 45Committee's 2016 spending was directly attributable to political ads, and well over 50% of its expenditures were paid directly to political consultants and ad agencies. Its major purpose—as further evidenced by its name, fundraising appeals, and public statements—

1

was plainly campaign activity. Yet 45Committee never registered as a political committee, *see* 52 U.S.C. §§ 30102, 30103, and never filed reports disclosing its contributors, expenditures, or debts and obligations, *id.* § 30104.

CLC's administrative complaint has been pending for over **575 days**, yet the FEC has taken no action, notwithstanding the approaching five-year statute of limitations for enforcement. Plaintiff requests that this Court declare that the FEC has acted contrary to law on account of its failure to act, and order the FEC to conform within 30 days by acting on Plaintiff's administrative complaint. *See* 52 U.S.C. § 30109(a)(8)(A). If the FEC does not or cannot conform within 30 days, the Federal Election Campaign Act ("FECA") authorizes Plaintiff to commence a civil action against 45Committee to enforce the campaign finance laws.

\* \* \*

1.  This is an action under FECA, 52 U.S.C. § 30109(a)(8)(A). Plaintiff seeks injunctive and declaratory relief to compel Defendant FEC to act on Plaintiff's administrative complaint regarding 45Committee's failure to register as a political committee in violation of 52 U.S.C. §§ 30102, 30103, and failure to file reports disclosing its contributors, expenditures, and debts and obligations, in violation of 52 U.S.C. § 30104.

2.  On August 23, 2018, CLC and Margaret Christ (an individual) filed with the FEC an administrative complaint showing that 45Committee—whose name is a reference to the election of the 45th president in 2016—spent $22,010,335 on independent expenditures and electioneering communications in the final weeks of the 2016 election.[1] According to 45Committee's tax return, spending on these communications alone constituted over 48% of its spending in its 2016 tax year, which ran from April 1, 2016 to March 31, 2017; millions more were paid to political consultants

---

[1] Ex. 1 (Admin. Compl.) ¶ 2.

and advertising agencies. This spending, as well as the organization's fundraising appeals and public statements about its purpose, demonstrate that 45Committee's major purpose was campaign activity, but nonetheless it did not register as a political committee and did not file mandatory FEC reports disclosing its contributors, expenditures, debts, and obligations.

3. FECA provides administrative complainants with a right of action against the FEC if the FEC fails to act on a complaint within 120 days, at which point, "the court may declare that . . . the failure to act is contrary to law and may direct the Commission to conform with such declaration within 30 days, failing which the complainant may bring, in the name of such complainant, a civil action to remedy the violation involved in the original complaint." 52 U.S.C. § 30109(a)(8)(C). More than 575 days have passed since Plaintiff filed the administrative complaint.

## JURISDICTION AND VENUE

4. This Court has both subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 52 U.S.C. § 30109(a)(8)(A). This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331. Venue lies in this district under 52 U.S.C. § 30109(a)(8)(A).

## PARTIES

5. CLC is a nonpartisan, nonprofit 501(c)(3) organization headquartered in Washington D.C., whose mission is to protect and strengthen the U.S. democratic process through research, education, litigation, and other legal advocacy. CLC participates in judicial and administrative matters throughout the nation regarding campaign finance, voting rights, redistricting, and government ethics issues. CLC's work on campaign finance-related issues, including public education, litigation, administrative advocacy and enforcement, and legislative

reform efforts, depends on accurate reporting of federal election expenditures as required by statute. This work is obstructed where, as here, campaign-finance information subject to mandatory disclosure under FECA is not available.

6. Defendant Federal Election Commission is an independent federal agency charged with the administration and civil enforcement of FECA. 52 U.S.C. § 30106.

## BACKGROUND

### *Governing Law*

7. A "political committee" is an organization that receives contributions or makes expenditures in excess of $1,000 during a calendar year for the purpose of influencing elections for federal office, *see* 52 U.S.C. § 30101(4)(A), (8)(A)(i), (9)(A)(i); 11 C.F.R. § 100.5(a). Political committees must register with the FEC and file reports disclosing their contributions, expenditures, and debts and obligations. *See* 52 U.S.C. §§ 30102-04.

8. In *Buckley v. Valeo,* 424 U.S. 1 (1976), the Supreme Court construed the term "political committee" to "only encompass organizations that are under the control of a candidate *or the major purpose of which is the nomination or election of a candidate*." *Id*. at 79 (emphasis added). Again, in *FEC v. Massachusetts Citizens for Life, Inc.,* 479 U.S. 238 (1986), the Court invoked the "major purpose" test and noted, in the context of analyzing the activities of a 501(c)(4) group, that if a group's independent spending activities "become so extensive that the *organization's major purpose may be regarded as campaign activity*, the corporation would be classified as a political committee." *Id.* at 262 (emphasis added). In that instance, the Court continued, the group would become subject to the "obligations and restrictions applicable to those groups *whose primary objective is to influence political campaigns*." *Id.* (emphasis added). The

Court in *McConnell v. FEC*, 540 U.S. 93 (2003), restated the "major purpose" test for political committee status as iterated in *Buckley*. *Id.* at 170 n.64.

9. The Commission has explained:

> [D]etermining political committee status under FECA, as modified by the Supreme Court, requires an analysis of both an organization's specific conduct—whether it received $1,000 in contributions or made $1,000 in expenditures—as well as its overall conduct—whether its major purpose is Federal campaign activity (*i.e.*, the nomination or election of a Federal candidate).

Supplemental Explanation and Justification on Political Committee Status, 72 Fed. Reg. 5595, 5597 (Feb. 7, 2007).

10. "[A]n organization['s] relative spending in the most recent calendar year" is a particularly relevant time period for assessing a group's major purpose. *CREW v. FEC,* 209 F. Supp. 3d 77, 93-94 (D.D.C. 2016).

11. In addition to an organization's overall spending, its public statements, advertisements, materials distributed to donors, and fundraising appeals are relevant to determining whether its major purpose is campaign activity.[2] There is no bright-line requirement that an organization spend over 50% on direct campaign activity for it to satisfy the major purpose test and be obligated to register as a political committee and file campaign finance reports.[3]

12. There is thus a two-prong test for "political committee" status under federal law: (1) whether the entity or other group of persons receives "contributions" or makes "expenditures" of $1,000 or more in a calendar year, and, if so, (2) whether an entity or other group of persons has a "major purpose" of influencing the "nomination or election of a candidate," as stated by *Buckley*.

---

[2] *See, e.g.*, 72 Fed. Reg. at 5601; *FEC v. Malenick*, 310 F. Supp. 2d 230, 234-36 (D.D.C. 2004); *FEC v. GOPAC, Inc.*, 917 F. Supp. 851, 859 (D.D.C. 1996); Advisory Opinion 2006-20 (Unity08).

[3] *See, e.g.*, *Real Truth About Abortion, Inc. v. FEC*, 681 F.3d 544, 555-58 (4th Cir. 2012) ("*RTAA*").

13. Any entity that meets the definition of a "political committee" must file a "statement of organization" with the Commission, 52 U.S.C. § 30103, must comply with the organizational and recordkeeping requirements of 52 U.S.C. § 30102, and must file periodic disclosure reports of its receipts and disbursements, 52 U.S.C. § 30104.[4]

14. The political committee disclosure reports required by FECA must disclose to the Commission and the public, including Plaintiff specific information regarding such committee's financial activities, including the identity of any donor who has contributed $200 or more to the committee within the calendar year. *See* 52 U.S.C. § 30104(b). Courts have repeatedly recognized the importance of campaign finance disclosure to informing the electorate. *See, e.g., Citizens United v. FEC*, 558 U.S. 310, 369 (2010) ("[T]he public has an interest in knowing who is speaking about a candidate shortly before an election."); *see also Stop This Insanity Inc. Emp. Leadership Fund v. FEC*, 761 F.3d 10, 17 (D.C. Cir. 2014) (describing the "First Amendment rights of the public to know the identity of those who seek to influence their vote").

*Facts*

15. On October 27, 2015, the *Wall Street Journal* reported that "[a] collection of top GOP operatives, financed by prominent Republican donors, is launching two new groups to take aim at Democratic presidential frontrunner Hillary Clinton."[5] One of those groups was a "super

---

[4] In addition, a "political committee" that makes contributions, including in-kind contributions and coordinated communications, is subject to limits on the contributions it receives, 52 U.S.C. § 30116(a)(1), (a)(2), (f), and may not accept contributions from corporations, 52 U.S.C. § 30118(a). *See* FEC Adv. Op. 2010-11, at 2 (Commonsense Ten) (concluding that committee that "intends to make only independent expenditures" and "will not make any monetary or in-kind contributions (including coordinated communications) to any other political committee or organization" is not subject to contribution limits).

[5] Patrick O'Connor & Rebecca Ballhaus, *New GOP Groups Taking Aim at Hillary Clinton*, WALL ST. J. (Oct. 27, 2015), https://www.wsj.com/articles/prominent-gop-donors-launch-new-groups-to-take-aim-at-hillary-clinton-1445984161.

PAC" called Future 45, while the other was a nonprofit 501(c)(4) organization called 45Committee, Inc."[6] The names of both entities are "references to the numerical ranking of the next president," the *Journal* noted.[7]

16. 45Committee engaged in little activity during the Republican presidential primary, but on September 28, 2016, *POLITICO* reported that "Todd Ricketts essentially took [it and Future 45] over this month with the intention of running pro-Trump ads, and began making calls seeking support from fellow mega-donors, many of whom had also vehemently opposed Trump."[8]

17. Ricketts, according to *POLITICO*, was "making a particular effort to win over donors who want to help Trump but are leery of having their names publicly associated with the polarizing Republican nominee."[9] *POLITICO* quoted "a fundraiser who is familiar with—but not connected to—Ricketts' fundraising effort," who said, "[t]here is a substantial appetite for a nondisclosing vehicle, because it's embarrassing to support Trump . . . . There are more donors who are willing to support Donald anonymously than with their names on it."[10]

18. On October 1, 2016, *CNN* reported that

> [t]he Ricketts family, the founder and heirs to the TD Ameritrade fortune, have told associates that the Adelsons has pledged $25 million to their groups, which includes a revived super PAC, Future 45, and the nonprofit 501(c)(4) group, 45Committee. It is unclear how the Adelsons plan to split their checks between the entities.
>
> And two people who have spoken personally with Todd Ricketts this week said Ricketts said he now had $35 million in the bank thanks to the Adelson

---

[6] *Id.*

[7] *Id.*

[8] Kenneth P. Vogel, *Secret money to boost Trump*, POLITICO (Sept. 28, 2016), https://www.politico.com/story/2016/09/secret-money-to-boost-trump-228817.

[9] *Id*.

[10] *Id*.

donation and was working toward raising $70 million, earmarked exclusively for the presidential race.[11]

19.     On October 6, 2016, the *New York Times* reported that 45Committee "will begin airing ads criticizing Hillary Clinton and praising Donald J. Trump as the 2016 election enters its final weeks. . . . The ads are part of a multimillion-dollar spending effort in battleground states, said the group's president, Brian Baker."[12]  The *Times* quoted Baker as saying:

> "It will take a builder and a proven job creator to get Americans working again," Mr. Baker said. "As we all know, after 40 years in political life, Secretary Clinton is not the change our country needs — in fact, it is no change at all."[13]

20.     During the 2016 election cycle, 45Committee reported spending $21,339,015 on independent expenditures opposing presidential candidate Hillary Clinton or supporting her opponent, Donald Trump; all of the communications were disseminated between October 4, 2016 and November 5, 2016.[14] It additionally reported spending $671,320 on electioneering communications opposing Florida U.S. Senate candidate Patrick Murphy; those communications were disseminated on October 27, 2016.[15]

21.     On February 15, 2018, 45Committee filed its Form 990 annual return with the Internal Revenue Service ("IRS"), for the 2016 tax year beginning April 1, 2016 and ending March

---

[11]     Theodore Schleifer, *Trump finally hits the big-money jackpot*, CNN (Oct. 1, 2016), https://www.cnn.com/2016/10/01/politics/donald-trump-big-money-success/index.html.

[12]     Maggie Haberman, *Pro-Trump Group to Release Ads as Part of Major Swing State Effort*, N.Y. TIMES (Oct. 6, 2016), https://www.nytimes.com/2016/10/07/us/politics/campaign-ads.html.

[13]     *Id*.

[14]     45 Committee Inc., Year-End Report of Independent Expenditures Made and Contributions Received, FEC Form 5, at 3-11 (filed Jan. 31, 2017), http://docquery.fec.gov/pdf/652/201701319042382652/201701319042382652.pdf.

[15]     Committee Inc., 24 Hour Electioneering Communication Notice, FEC Form 9, at 3 (filed Oct. 28, 2016), http://docquery.fec.gov/pdf/385/201610319037011385/201610319037011385.pdf.

31, 2017.[16] 45Committee reported $46,362,986 in revenue and $45,556,334 in expenses during the tax year.[17] By contrast, in the 2015 tax year, when no national elections were held, 45Committee raised only $2,225,000 and spent $1,008,469.[18]

22. Therefore, the $22,010,335 that 45Committee spent on independent expenditures and electioneering communications in the weeks before the 2016 election constituted 48.3 percent of its overall spending in the 2016 tax year. 45Committee's election-related disbursements likely constituted an even higher percentage of its overall spending during the 2016 *calendar* year.[19]

23. 45Committee's annual return filed with the IRS suggests its other spending in its 2016 tax year may have been intended to support the nomination or election of a candidate in the 2016 election. In Part VII, Section B of its annual return, 45Committee reported a total of $38.3 million in payments—approximately 84% of its total expenditures—to "independent contractors"

---

[16] 45Committee Inc., Return of Organization Exempt from Income Tax, IRS Form 990, at 1 (filed Feb. 15, 2018), https://www.documentcloud.org/documents/4390683-45Committe-2016-Form-990.html.

[17] *Id*.

[18] *Id*.

[19] 45Committee spent around $4 million in the first several weeks of the 2017 calendar year, *see* Tom LoBianco, *First on CNN: Pro-Trump Group Hacked, Website Taken Down in Cabinet Fight*, CNN (Feb. 6, 2017), https://www.cnn.com/2017/02/06/politics/45-committee-website-hacked/index.html. 45Committee spent $45,556,334 between April 1, 2016 and March 31, 2017; subtracting the $4 million spent in the first several weeks of 2017 on non-election-related nominee communications indicates that 45Committee spent no more than $41,556,334 in April through December 2016. Moreover, 45Committee only spent around $1 million in its 2015 tax year, which ran April 1, 2015 through March 31, 2016. 45Committee 2016 990, *supra* note 16, at 1. Even if all of that $1 million had been spent in the 2016 calendar year, then at least $22,010,335 of 45Committee's $42.5 million spent in calendar year 2016—nearly 52%—was on election-related disbursements reported to the Commission.

for what it described as "media ads services."[20] Four out of the five firms[21] were the same vendors that 45Committee had reported to the Commission as having produced or placed its independent expenditures and electioneering communications:

> i. On its reports filed with the Commission, 45Committee reported paying $15.6 million to the firm Del Cielo Media LLC for independent expenditures (in the form of four "media placements"),[22] but its annual return filed with the IRS shows that it paid Del Cielo Media LLC $17.4 million. On its website, Del Cielo Media describes the various "media buying services" it provides for "your election" and "your campaign."[23] According to a May 2017 piece on *Campaign & Elections*, Del

---

[20] 45Committee Inc., Return of Organization Exempt from Income Tax, IRS Form 990, at 8 (filed Feb. 15, 2018), *available at* https://www.documentcloud.org/documents/4390683-45Committe-2016-Form-990.html.

[21] The fifth independent contractor that 45Committee disclosed to the IRS as having received more than $100,000 was Target Enterprises LLC, in Sherman Oaks, California. 45Committee did not report to the FEC that it paid a firm with the same name for independent expenditures or electioneering communications; it did pay "TargetPoint Consulting" in Alexandria, Virginia for electioneering communications, but these appear to be separate firms. *Compare* https://www.targetpointconsulting.com/ *with* https://targetla.com/. According to Federal Communications Commission records, 45Committee contracted with Target Enterprises for at least some of the advertisements it aired in early 2017 supporting President Trump's nominees. *See* Target Enterprises, *Agreement Form for Non-Candidate Advertising* (Jan. 25, 2017) (disclosing broadcast purchase on behalf of 45Committee on station WJRT-FLINT for advertisements "Supporting the President's nominee for HHS Secretary and repealing Obamacare"), attached to Administrative Complaint.

[22] 45Committee, Itemized Independent Expenditures, FEC Schedule 5-E, at 3, 4, 8, 10 (filed Jan. 31, 2017), http://docquery.fec.gov/pdf/652/201701319042382652/201701319042382652.pdf.

[23] *About*, Del Cielo Media, http://delcielomedia.com/about.html (last visited Mar. 24, 2020).

Cielo Media is a "venture focusing on PACs" headed by "GOP media buyer Paul Winn."[24]

    ii. On its reports filed with the Commission, 45Committee reported paying $420,493 to Connell Donatelli Inc. for independent expenditures (two "media placements"),[25] but reported paying the firm a total of $10.3 million on its annual return filed with the IRS. Connell Donatelli (now known as Campaign Solutions) describes itself as having "pioneered online political fundraising, advertising, and digital strategy."[26]

    iii. On its reports filed with the Commission, 45Committee reported paying $4.6 million to the firm DDC for independent expenditures (in the form of eight "media placements"),[27] but its annual IRS return shows it paid the firm a total of $6.1 million over the tax year.

    iv. On its reports filed with the Commission, 45Committee reported paid Mentzer Media Services $663,320 for "media placement" for its electioneering communications,[28] but its annual IRS return shows it paid the firm $3.8 million over the tax year. Mentzer Media emphasizes that it "has been helping clients win

---

[24] Sean J. Miller, *Consultants Grapple with Early Vote Ad Strategy*, CAMPAIGNS & ELECTIONS (May 22, 2017), https://www.campaignsandelections.com/campaign-insider/consultants-grapple-with-early-vote-ad-strategy.

[25] 45Committee, Itemized Independent Expenditures, FEC Schedule 5-E, at 4 (filed Jan. 31, 2017), http://docquery.fec.gov/pdf/652/201701319042382652/201701319042382652.pdf.

[26] *About Us*, Campaign Solutions, https://www.campaignsolutions.com/ (last visited Mar. 24, 2020).

[27] 45Committee, Itemized Independent Expenditures, FEC Schedule 5-E, at 5, 6, 7, 9 (filed Jan. 31, 2017), http://docquery.fec.gov/pdf/652/201701319042382652/201701319042382652.pdf.

[28] 45Committee, 24 Hour Notice of Disbursements/Obligations for Electioneering Communications, FEC Schedule 9-B, at 3 (filed Oct. 28, 2016), http://docquery.fec.gov/pdf/385/201610319037011385/201610319037011385.pdf.

elections and campaigns through targeted media buys since 1991" and touts its "combined 82 years of political media buying experience."[29] In a 2012 piece on Mentzer, *The Washington Post* described the firm as "the top of the small-but-critical campaign sub-specialty of media buying."[30]

24. It appears that a substantial portion of the $37,600,000 paid to these four political consulting firms for "media ads services" were for election-related purposes. The disbursements disclosed on 45Committee's annual return to the IRS, but not disclosed on its reports to the Commission, may reflect (1) that the total cost of 45Committee's independent expenditures and electioneering communications were not fully reflected on reports filed with the Commission, and/or (2) that the additional disbursements to these campaign vendors were for election-related communications in 2016 that did not constitute independent expenditures or electioneering communications, but which should nonetheless be considered election-related for purposes of the major purpose test, given the timing of 45Committee's ads, and the fact that the payments are to the same vendors as produced its other election-related communications.

25. To the extent that 45Committee paid these vendors for communications that were not reported to the Commission, the timing and distribution of those ads demonstrates their electoral purpose. According to a study conducted by the Center for Public Integrity, which analyzed broadcast ads and ads run on national cable, 45Committee aired 5,241 broadcast spots in the second half of 2016; all ran in the weeks before the election—from October 2 through November 5, 2016—and were concentrated in the swing states of Pennsylvania, North Carolina,

---

[29] *About Us*, Mentzer Media, http://www.mentzermedia.com/ (last visited Mar. 24, 2020).

[30] Bill Turque, *Master of the art of the media buy*, WASH. POST (Sept. 5, 2012), https://www.washingtonpost.com/politics/master-of-the-art-of-the-media-buy/2012/09/05/f47a8f9c-f761-11e1-8b93-c4f4ab1c8d13_story.html.

and Florida.[31] This number *exceeded* the number of broadcast spots aired by Future45, 45Committee's sister super PAC, as well as the number aired by the Republican National Committee.[32]

26. 45Committee's other public communications from 2016 also indicate that its major purpose was electoral. During the entirety of 2016, 45Committee tweeted just six times, all in October and November, and all attacking Clinton and supporting Trump.[33]

27. On its Facebook page, 45Committee posted only once in 2016, on October 6. That post read, "A tired career politician who will increase taxes and cost jobs, or a proven job creator who will fight for good American jobs? The choice is clear. It's time to make America strong again," and included a video of a political ad.[34]

---

[31] Al Letson, *When mad men meet dark money*, WDET (Mar. 15, 2016), https://wdet.org/posts/2016/03/15/82665-when-mad-men-meet-dark-money/ (last visited Mar. 24, 2020). Notably, 45Committee's ads ran up until Election Day. For example, after the Clinton campaign challenged the veracity of a 45Committee ad and asked stations to take it down, attorneys responded to the stations on behalf of 45Committee and Future 45, writing "We trust you will make a fact-based decision and continue to air these ads in order to allow the American people to be fully educated about their candidates for President. With just one day before the election, any decision to stop airing the ad will cause irreparable harm to 45Committee and Future45." Clark Hill Letter (Nov. 7, 2016), Ex. 1 (Admin. Compl.). at Ex. A.

[32] *Id*.

[33] *See* 45Committee, *A tired career politician*, TWITTER (Oct. 6, 2016), https://twitter.com/45_Committee/status/784129857466798080; 45Committee, *It's time to make America strong again*, TWITTER (Oct. 7, 2016), https://twitter.com/45_Committee/status/784383293772800002; 45Committee, *Americans don't need 4 more years of job loss*, Twitter (Oct. 7, 2016), https://twitter.com/45_Committee/status/784451489666174977; 45Committee, *We need to change Washington*, TWITTER (Oct. 9, 2016), https://twitter.com/45_Committee/status/785118896206454788; 45Committee, *Stop the Clinton scandals*, TWITTER (Nov. 6. 2016), https://twitter.com/45_Committee/status/795288754953027586; 45Committee, *"Why aren't I 50 points ahead,"* TWITTER (Nov. 6, 2016), https://twitter.com/45_Committee/status/795332438398373888

[34] 45Committee, *A tired career politician*, FACEBOOK (Oct. 6, 2016), https://www.facebook.com/45Committee/videos/353576058317537/.

28. In addition to its substantial direct and indirect campaign related spending, 45Committee's very name, its public statements, and its fundraising appeals all demonstrate its major purpose was campaign related.[35]

## ADMINISTRATIVE PROCEEDINGS

29. On August 23, 2018, CLC and an individual, Margaret Christ, filed a complaint with the FEC against 45Committee seeking enforcement of FECA's registration and reporting requirements, 52 U.S.C. §§ 30102-04.

30. On August 29, 2018, the FEC sent CLC and Christ a letter acknowledging receipt of the complaint and designating it MUR 7486.

31. FECA establishes a five-year statute of limitations on enforcement actions, which is rapidly approaching for the violations alleged in Plaintiff's complaint.

32. Nonetheless, the Commission has taken no action on the complaint, which has been pending for over 575 days. As of September 1, 2019, the Commission lacks a quorum.

## CAUSE OF ACTION
## FECA, 52 U.S.C. § 30109(a)(8)(A)

33. Plaintiff repeats and realleges paragraphs 1-32.

34. Defendant's failure to act on Plaintiff's administrative complaint is contrary to law. *See* 52 U.S.C. § 30109(a)(8)(A).

## REQUESTED RELEF

WHEREFORE, Plaintiff requests that this Court:

(1) Declare that the FEC's failure to act on Plaintiff's administrative complaint is contrary to law under 52 U.S.C. § 30109(a)(8)(A);

---

[35] *See* Ex. 1 (Admin. Compl.) ¶ 30.

(2)    Order the FEC to conform with this declaration within 30 days pursuant to 52 U.S.C. § 30109(a)(8)(C);

(3)    Award Plaintiff its costs and reasonable attorneys' fees incurred in this action; and

(4)    Grant such other relief the Court may deem just and proper.

March 24, 2020                             Respectfully submitted,

/s/ Mark P. Gaber
Adav Noti (DC Bar No. 490714)
Mark P. Gaber (DC Bar No. 988077)
Molly E. Danahy (DC Bar No. 1643411)
CAMPAIGN LEGAL CENTER
1101 14th Street NW, Ste. 400
Washington, DC 20005
(202) 736-2200
anoti@campaignlegal.org
mgaber@campaignlegal.org
mdanahy@campaignlegal.org