# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

CAMPAIGN LEGAL CENTER,

     *Plaintiff*,

v.

FEDERAL ELECTION COMMISSION,

     *Defendant*.

Case No. 1:20-cv-00809-ABJ

(Assigned to Hon. Amy Berman Jackson)

## BRIEF AMICUS CURIAE
## OF THE
## NEW CIVIL LIBERTIES ALLIANCE
## IN SUPPORT OF NEITHER PARTY

**CORPORATE DISCLOSURE STATEMENT**
**AND**
**L. CIV. R. 7(o)(5) & FRAP 29(a)(4)(E) STATEMENT**

The New Civil Liberties Alliance is a 501(c)(3) nonprofit organization organized under the laws of the District of Columbia. It has no parent corporation and no publicly held corporation owns ten percent or more of its stock.

No counsel for a party authored any part of this brief. No one other than *amicus curiae*, its members, or its counsel financed the preparation or submission of this brief.

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT AND
L. CIV. R. 7(o)(5) & FRAP 29(a)(4)(E) STATEMENT ..................................................ii

TABLE OF AUTHORITIES ...................................................................................................iv

INTEREST OF AMICUS CURIAE............................................................................................1

STATEMENT OF THE CASE ...................................................................................................3

ARGUMENT..................................................................................................................................5

I.      CLC LACKS ARTICLE III STANDING .........................................................................5

        A.  This Court Has the Obligation to Determine Whether the Plaintiff Has
            Standing, *Sua Sponte* if Necessary ..............................................................................5

        B.  FECA Sections 30109(a)(1) and 30109(a)(8)(A) Only Confer the Right to
            Sue on a Party that Otherwise Already Has Standing.............................................6

II.     FRCP 55 DOES NOT ABSOLVE THE COURT OF ITS OBLIGATION TO DETER-
        MINE WHETHER THE PLAINTIFF HAS STANDING ......................................................9

III.    CLC'S CLAIMED INJURY IS NOT CONSTITUTIONALLY REDRESSABLE ......................11

        A.  Federal Courts Cannot Order Executive Officials to Perform
            Discretionary Acts......................................................................................................11

        B.  CLC Cannot Constitutionally Transfer an Independent Agency's
            Executive Functions to the Federal Courts.............................................................14

CONCLUSION..............................................................................................................................17

CERTIFICATE OF COMPLIANCE ...........................................................................................19

CERTIFICATE OF SERVICE .....................................................................................................20

# TABLE OF AUTHORITIES

CASES

*Animal Legal Defense Fund, Inc. v. Espy,*
    29 F.3d 720 (D.C. Cir. 1994) ....................................................................................................11

*Bender v. Williamsport Area Sch. Dist.,*
    475 U.S. 534 (1986) ....................................................................................................................5

*Berthiaume v. Doremus,*
    998 F. Supp. 2d 465 (W.D. Va. 2014) .....................................................................................10

*Diaz v. Green Tree Servicing, LLC,*
    No. C15-359RSL, 2015 WL 3451278 (W.D. Wash. May 29, 2015)........................................10

*Campaign Legal Center v. FEC,*
    334 F.R.D. 1 (D.D.C. 2019)........................................................................................................4

*Chamberlain v. Giampapa,*
    210 F.3d 154 (3d Cir. 2000) .....................................................................................................10

*Cherry v. FCC,*
    641 F.3d 494 (D.C. Cir. 2011) .................................................................................................11

*Citizens for Responsibility & Ethics in Washington v. FEC,*
    799 F. Supp. 2d 78 (D.D.C. 2011) .............................................................................................9

*Clapper v. Amnesty Int'l USA,*
    568 U.S. 398 (2013) ..................................................................................................................15

*Common Cause v. FEC,*
    108 F.3d 413 (D.C. Cir. 1997) .........................................................................................6, 7, 8, 9

*Eitel v. McCool,*
    782 F.2d 1470 (9th Cir. 1986).................................................................................................10

*FEC v. Akins,*
    524 U.S. 11 (1998) ......................................................................................................................8

*Freemyer v. Kyrene Village II, LLC,*
    No. 10-cv-1506-PHX-GMS, 2011 WL 42681 (D. Ariz. Jan. 6, 2011)....................................10

*Free Speech for People v. FEC,*
    __ F. Supp. 3d __, 2020 WL 999205 (D.D.C. Mar. 2, 2020)...............................................8, 9

*Heckler v. Chaney,*
    470 U.S. 821 (1985)..................................................................................................................11

*Hill v. Williamsport Police Dep't,*
    69 Fed. Appx. 49 (3d Cir. 2003)...............................................................................................10

*Humphrey's Executor v. United States*,
   295 U.S. 602 (1935) ........................................................................................2, 11, 15, 16

*Int'l Painters & Allied Trades Industry Pension Fund v. Auxier Drywall, LLC*,
   531 F. Supp. 2d 56 (D.D.C. 2008) .............................................................................9

*Jackson v. Beech*,
   636 F.2d 831 (D.C. Cir. 1980) ...................................................................................9

*Jin v. Ministry of State Security*,
   475 F. Supp. 2d 54 (D.D.C. 2007) .............................................................................6

*Jin v. Ministry of State Security*,
   557 F. Supp. 2d 131 (D.D.C. 2008) ...........................................................................5

*Judicial Watch, Inc. v. FEC*,
   180 F.3d 277 (D.C. Cir. 1999) ...................................................................................9

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ........................................................................................6, 7, 8, 9

*Marbury v. Madison*,
   5 U.S. 137 (1803) .......................................................................................11, 12, 13

*Nader v. FEC*,
   725 F.3d 226 (D.C. Cir. 2013) ...................................................................................8

*National Treasury Employees Union v. Nixon*,
   492 F.2d 587 (D.C. Cir. 1974) .................................................................................12

*Pena v. Seguros La Comercial, S.A.*,
   770 F.2d 811 (9th Cir. 1985) ....................................................................................17

*Pulliam v. Pulliam*,
   478 F.2d 935 (D.C. Cir. 1973) ...................................................................................9

*Russell v. City of Farmington Hills*,
   34 Fed. Appx. 196 (6th Cir. 2002) ...........................................................................10

*Steel Co. v. Citizens for a Better Environment*,
   523 U.S. 83 (1998) ................................................................................................5, 9

*Summers v. Earth Island, Inst.*,
   555 U.S. 488 (2009) .................................................................................................11

*United States v. Armstrong*,
   517 U.S. 456 (1996) .................................................................................................11

*United States ex rel. McLennan v. Wilbur*,
   283 U.S. 414 (1931) .................................................................................................12

*U.S. Bank v. IRS,*
    No. 12-cv-78-M-DWM, 2013 WL 788079 (D. Mont. Mar. 1, 2013)...........................................10

*U.S. Ecology, Inc. v. U.S. Dep't of Interior,*
    231 F.3d 20 (D.C. Cir. 2000) ..........................................................................................7

*Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.,*
    454 U.S. 471 (1982)...................................................................................................10, 11

*Vermont Agency of Natural Resources v. United States ex rel. Stevens,*
    529 U.S. 765 (2000).........................................................................................................5

*VonGrabe v. Sprint PCS,*
    312 F. Supp. 2d 1313 (S.D. Cal. 2004) ......................................................................16, 17

*Weeks v. Goltra,*
    7 F.2d 838 (8th Cir. 1925) .............................................................................................12

*Wertheimer v. FEC,*
    268 F.3d 1070 (D.C. Cir. 2001) .......................................................................................9

*Young v. United States ex rel. Vuitton et Fils S.A.,*
    481 U.S. 787 (1987)........................................................................................................11


## CONSTITUTIONAL PROVISIONS

U.S. CONST. art. II, § 2, cl. 2 (Appointments Clause)...............................................................15

U.S. CONST. art. II, § 3 (Take Care Clause) ...............................................................1, 2, 16

U.S. CONST. art. III..............................................................................................................*passim*


## STATUTES

16 U.S.C. § 1540(g) ...................................................................................................................8

52 U.S.C. § 30106(a)(1) .....................................................................................................4, 15

52 U.S.C. § 30106(c) ..........................................................................................................3, 4

52 U.S.C. § 30107(a)(6) ......................................................................................................3, 4

52 U.S.C. § 30109(a)(1) .............................................................................................3, 5, 6, 7

52 U.S.C. § 30109(a)(2) ...............................................................................3, 4, 12, 13, 14

52 U.S.C. § 30109(a)(4) ......................................................................................................13

52 U.S.C. § 30109(a)(4)(A)(i) ............................................................................................13

52 U.S.C. § 30109(a)(8) .......................................................................................................4, 13

52 U.S.C. § 30109(a)(8)(A).............................................................................................*passim*

52 U.S.C. § 30109(a)(8)(C) ....................................................................................3, 4, 7, 13, 17

U.S. Code Title 26, Chapter 95 ..................................................................................................12

U.S. Code Title 26, Chapter 96 ..................................................................................................12


**RULES**

D.D.C. Local Civil Rule 5.1(d) ...................................................................................................19

D.D.C. Local Civil Rule 7(o)(4) .................................................................................................19

D.D.C. Local Civil Rule 7(o)(5) ...................................................................................................ii

Fed. R. App. P. 29(a)(4)(E)..........................................................................................................ii

Fed. R. Civ. P. 8(b)(6) .................................................................................................................14

Fed. R. Civ. P. 54 .........................................................................................................................17

Fed. R. Civ. P. 55 ..................................................................................................................*passim*

Fed. R. Civ. P 55(d) .......................................................................................................................9

Fed. R. Civ. P. 60 .........................................................................................................................16


**OTHER AUTHORITIES**

6 James Wm. Moore *et al.*, Moore's Federal Practice § 55-20[2][b] (3d ed. 1999) ...................10

10A Wright & Miller, Federal Practice & Procedure § 2685 (4th ed. 2020) ...........................10

10A Wright & Miller, Federal Practice & Procedure § 2688 (4th ed. 2020) ...........................14

10A Wright & Miller, Federal Practice & Procedure § 2688.1 (4th ed. 2020) ........................14

Affidavit for Default,
   *Campaign Legal Center v. FEC*, No. 1:20-cv-00588-BAH (May 5, 2020),
   ECF No. 10...............................................................................................................................4

Clerk's Entry of Default,
   *Campaign Legal Center v. FEC*, No. 1:20-cv-00588-BAH (May 6, 2020),
   ECF No. 11...............................................................................................................................4

*FEC Leadership & Structure*, FEC,
   https://www.fec.gov/about/leadership-and-structure/ ...........................................................4

*FEC Leadership & Structure, All Commissioners*, FEC
     https://www.fec.gov/about/leadership-and-structure/commissioners/ ...............................14

Letter from Matthew S. Petersen, FEC Commissioner, to President Donald J. Trump
     (Aug. 26, 2019), *available at*
     https://www.fec.gov/resources/cms-content/documents/Vice_Chair-
     man_Petersen_LOR_8.26.19.pdf ...................................................................................14

Motion for Default Judgment,
     *Campaign Legal Center v. FEC*, No. 1:20-cv-00588-BAH (May 14, 2020),
     ECF No. 12 .......................................................................................................................4

Order Granting Plaintiff's Motion for Default Judgment,
     *Citizens for Responsibility & Ethics in Washington v. FEC*,
     No. 1:19-cv-02753-RCL (D.D.C. Apr. 9, 2020), ECF No. 9.......................................4

PN1600, Nomination of James E. Trainor III for Federal Election Commission,
     116th Congress,
     https://www.congress.gov/nomination/116th-congress/1600...................................4

## INTEREST OF AMICUS CURIAE

The New Civil Liberties Alliance (NCLA) is a nonpartisan, nonprofit civil rights organization and public-interest law firm. Professor Philip Hamburger founded NCLA to challenge multiple constitutional defects in the modern administrative state through original litigation, *amicus curiae* briefs, and other advocacy.

The "civil liberties" of the organization's name include rights at least as old as the U.S. Constitution itself, such as the due process of law, jury trial, and the right to live under laws made by the nation's elected lawmakers through constitutionally prescribed channels. Yet these selfsame rights are also very contemporary—and in dire need of renewed vindication—precisely because Congress, federal administrative agencies like the Federal Election Commission (FEC), and even courts have neglected them for so long.

NCLA aims to defend civil liberties—primarily by asserting constitutional constraints on the modern administrative state. Although Americans still enjoy the shell of their Republic, a very different sort of government has developed within it—a type, in fact, that the Constitution was designed to prevent. This unconstitutional state within the Constitution's United States is the focus of NCLA's concern.

In this instance, NCLA is particularly disturbed by the near-certain entry of default judgment against FEC. Entry of a Rule 55 default judgment under the Federal Rules of Civil Procedure is problematic on multiple levels in cases such as this one. *Amicus* respectfully urges the Court to not create a quagmire by entering a default judgment in a case where the plaintiff lacks Article III standing, the defendant lacks the four votes necessary to even defend itself in time, and where the plaintiff is asking the Court to decide a political question in an advisory opinion. The issue of the unconstitutional transfer, at the behest of private parties, of political and prosecutorial discretion from the Executive Branch to the federal courts is of the highest importance because it threatens the independence and legitimacy of the federal judiciary. It also interferes with the President's constitutional duty to "take Care that the Laws be faithfully executed." U.S. CONST. art. II, § 3.

Americans enjoy the freedom to elect the person in whom the Constitution vests the executive power, and the Constitution thereby makes the exercise of executive power accountable to the people. But agencies like FEC will remain independent of the President's control until the Supreme Court revisits *Humphrey's Executor*, 295 U.S. 602 (1935). However, a federal-court plaintiff that in essence asks this Court to decide whether FEC has failed to take care that the laws are faithfully executed needs to sue the President. By suing FEC—and not the President—the federal-court plaintiff should not be permitted to transfer the President's Article II take-care obligation to an Article III judge. Permitting a non-responsive FEC to divest the President of executive power would make independent agencies even more constitutionally suspect than they already are.

NCLA is opposed to the abuse of power by independent agencies like FEC, and to prior licensing of speech. But it also opposes CLC's attempt to get this Court to do the work of an independent agency simply because, until May 19, 2020, the agency lacked a quorum and the political branches of government were unable or unwilling to fill FEC vacancies since September 2019.

CLC urges this Court to take sweeping action—to take control of a federal agency's inherent and exclusive prosecutorial discretion, ignore the President's power of appointment, and the Senate's power to advise and consent to executive nominations. While the latter deficiencies are now apparently cured because a quorum has been (or soon will be) restored, this Court still lacks the constitutional as well as the statutory authority to enter any judgment other than dismissing the case without prejudice. CLC's case against FEC will remain not justiciable.

## STATEMENT OF THE CASE

The Federal Election Campaign Act (FECA), as relevant here, sets out an enforcement scheme. "Any person who believes a violation of [FECA] … has occurred … may file a complaint with the Commission." 52 U.S.C. § 30109(a)(1).[1] FEC, after notice and opportunity to respond to the administrative complaint, votes as to whether FEC "has reason to believe" that the respondent violated FECA (§ 30109(a)(2)). Four commissioners must vote in the affirmative for FEC to exercise prosecutorial discretion and commence investigation of the administrative complaint. *Id.* Without four votes, FEC must dismiss the complaint; if it does so, the complainant may then "file a petition" with this Court within 60 days of dismissal (§ 30109(a)(8)(A)–(B)).

FEC can also, as here, "fai[l] … to act on [the] complaint" (§ 30109(a)(8)(A)). The statute, purportedly, also allows the administrative complainant to "file a petition" with this Court if FEC fails to act within 120 days of the administrative-complaint-filing date. *Id.*

This case arises out of a failure-to-act—as opposed to a dismissal-of-administrative-complaint—scenario. Plaintiff, in its federal complaint, alleges that FEC has taken no action on its administrative complaint against 45Committee, Inc. and that the administrative complaint has been pending for over "575 days." Complaint, *Campaign Legal Center v. FEC*, No. 1:20-cv-00819-ABJ (D.D.C. Mar. 24, 2020), ECF No. 1, at ¶ 32 ("Compl."). Its sole cause of action alleges that FEC's "failure to act" on Plaintiff Campaign Legal Center's (CLC) administrative complaint "is contrary to law" (§ 30109(a)(8)(A)). *Id.* at ¶ 34. CLC asks this Court to order FEC to process CLC's administrative complaint against 45Committee, Inc. *Id.* at 14–15.

FEC must have four affirmative votes to defend such civil actions brought against it (§§ 30106(c), 30107(a)(6), 30109(a)(8)(C)). In such suits, this Court may only "declare that … the failure to act is contrary to law, and may direct the Commission to conform with such declaration within 30 days" (§ 30109(a)(8)(C)).

---

[1]       Unless otherwise noted, all sections are codified in Title 52, United States Code.

FEC is made up of six commissioners, appointed by the President, by and with the advice and consent of the Senate (§ 30106(a)(1)). From September 2019 to May 19, 2020, FEC was composed of only three commissioners. *FEC Leadership and Structure*, FEC, https://www.fec.gov/about/leadership-and-structure/ (last visited May 20, 2020). FEC, therefore, having three vacancies, was practically incapable of obtaining four votes to either act on CLC's administrative complaint (§ 30109(a)(2)), or to defend this suit (§§ 30106(c), 30107(a)(6), 30109(a)(8)(C)).[2]

CLC, by operation of the two-suit mechanism of Section 30109(a)(8), currently cannot sue the real party in interest—45Committee, Inc.—which was the administrative respondent before FEC. 45Committee, Inc., therefore, is not a named defendant in this case. And because FEC, as of this filing, has not obtained the four votes necessary to defend against CLC, it cannot appear before this Court. By normal operation of Federal Rules of Civil Procedure (FRCP), if the Defendant fails to file a responsive pleading answering or contesting CLC's complaint, CLC is expected to seek entry of default judgment under FRCP 55.[3] The practical effect of either granting CLC's request for entry of default judgment or ruling on the merits of CLC's cause of action under § 30109(a)(8)(A) would be to order FEC to investigate CLC's administrative complaint against 45Committee, Inc.—and thereby disregard FEC's inherent and exclusive prosecutorial discretion to make that determination.

---

[2]     On May 19, 2020, the Senate confirmed James E. Trainor III as a fourth FEC commissioner. PN1600, Nomination of James E. Trainor III for Federal Election Commission, 116th Congress, https://www.congress.gov/nomination/116th-congress/1600 (last visited May 20, 2020). The now four-member FEC might still not vote unanimously to defend this suit. *See, e.g.*, *Campaign Legal Center v. FEC*, 334 F.R.D. 1, 4 (D.D.C. 2019) (the vote required to defend itself was split "3–1").

[3]     Campaign Legal Center has done so in at least one other pending case in this district. *Cf.* Affidavit for Default, *Campaign Legal Center v. FEC*, No. 1:20-cv-00588-BAH (May 5, 2020), ECF No. 10; Clerk's Entry of Default, *Campaign Legal Center v. FEC*, No. 1:20-cv-00588-BAH (May 6, 2020), ECF No. 11; Motion for Default Judgment, *Campaign Legal Center v. FEC*, No. 1:20-cv-00588 (May 14, 2020), ECF No. 12. At least one other group has similarly succeeded in obtaining a default judgment against FEC in at least one case. *See* Order Granting Plaintiff's Motion for Default Judgment, *Citizens for Responsibility & Ethics in Washington v. FEC*, No. 1:19-cv-02753-RCL (D.D.C. Apr. 9, 2020), ECF No. 9. When Judge Lamberth issued default judgment last month, he faced a very different set of circumstances from those in this case. Mr. Trainor had not been confirmed to FEC. It was unclear when FEC would again have a quorum. And Judge Lamberth did not have the benefit of the presentation of the important constitutional and jurisdictional arguments that *amicus* presents here.

## ARGUMENT

### I.     CLC LACKS ARTICLE III STANDING

The Plaintiff lacks Article III standing. This Court has the obligation *sua sponte* to determine whether the Plaintiff has standing before entering judgment. Neither the citizen-complainant provision of Section 30109(a)(1) nor the purported citizen-suit provision of Section 30109(a)(8)(A) confers standing on CLC. CLC has not alleged any facts demonstrating it has Article III standing. Such an inquiry can neither be assumed nor waived or suspended.

### A.     This Court Has the Obligation to Determine Whether the Plaintiff Has Standing, *Sue Sponte* if Necessary

Every federal court has an independent obligation to "satisfy itself" that it has jurisdiction "even though the parties are prepared to concede it." *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986). The Court is obligated to operate under "the absolute purity of the rule that Article III jurisdiction is always an antecedent question." *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 101 (1998). Under Article III, there can be no such thing as "hypothetical jurisdiction" or a "hypothetical judgment" via which federal courts order the relief (a Rule 55 default judgment or otherwise) the Plaintiff seeks without resolving the question of Article III standing. *Id.* Such a judgment is "the same thing as an advisory opinion." *Id.* The Article III question is not one of "legal niceties," because "statutory and (especially) constitutional elements of jurisdiction are an essential ingredient of separation and equilibrium of powers, restraining the courts from acting at certain times, and even restraining them from acting permanently regarding certain subjects." *Id.* "[I]f there is no jurisdiction there is no authority to sit in judgment of anything else." *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765, 778 (2000).

This Court has "an obligation to determine, *sua sponte*, its jurisdiction." *Jin v. Ministry of State Security*, 557 F. Supp. 2d 131, 138 (D.D.C. 2008). In this unique situation, it is all the more important for the Court to determine whether CLC has Article III standing. Otherwise, there is a real danger that strategic plaintiffs will take advantage of an unable-to-defend-itself federal agency—unable because of vacancies and by operation of quorum rules. The tactic of filing such opportunistic lawsuits—

resulting in default judgments and the possibility of reaping windfall attorneys' fees for purportedly "prevailing"—is a dangerous one that raises serious constitutional concerns and invites unnecessary litigation. Even if FEC votes in time to defend itself, it is unknown whether it will question CLC's standing. The Court still would retain the obligation to satisfy itself that the plaintiff has standing and, therefore, that the Court has subject-matter jurisdiction. Furthermore, this situation is easily capable of arising again, and it would serve the interests of justice for the Court to decide now whether a plaintiff in CLC's shoes has standing to proceed when FEC lacks a quorum.

In *Jin*, as here, the *amicus*'s brief was the only filing that had suggested that the court lacked jurisdiction. The court not only granted *amicus* leave to file the brief, but gave the parties an opportunity to substantively respond, after which it ultimately adopted the *amicus*'s position. *Id.* at 138 (referring to the court's earlier decision in the same case in *Jin v. Ministry of State Security*, 475 F. Supp. 2d 54, 57 n.2 (D.D.C. 2007)). The Court will fulfill its Article III obligation by following the same course of action here.

## B.     FECA Sections 30109(a)(1) and 30109(a)(8)(A) Only Confer the Right to Sue on a Party that Otherwise Already Has Standing

*Common Cause v. FEC* is on point. 108 F.3d 413 (D.C. Cir. 1997). In *Common Cause*, the plaintiff had argued that the citizen-complainant provision of Section 30109(a)(1) and the citizen-suit provision of Section 30109(a)(8)(A) "confers on 'any person' who believes that FECA has been violated, a right to seek judicial review in federal court." *Common Cause*, 108 F.3d at 419. The D.C. Circuit rejected that argument. It concluded that FECA:

> does not confer standing; it confers a right to sue upon parties who otherwise already have standing. As in *Lujan*, absent the ability to demonstrate a 'discrete injury' flowing from the alleged violation of FECA, Common Cause cannot establish standing merely by asserting that the FEC failed to process its complaint in accordance with law. To hold otherwise would be to recognize a justiciable interest in having the Executive Branch act in a lawful manner. This, the Supreme Court held in *Lujan*, is not a legally cognizable interest for purposes of standing.

*Id.* at 419 (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 573 (1992)).

The *Common Cause* court engaged in the full *Lujan* Article III standing inquiry to decide whether the plaintiff had standing to bring suit. The court concluded that the plaintiff had "failed to demonstrate that it has suffered a legally cognizable injury as a result of" FEC's action or inaction and, therefore, dismissed the case. *Id.* So too here.

To establish standing, CLC must prove it has "suffered an [(1)] injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical, [(2) which is] fairly traceable to the challenged action, [and (3)] likely will be redressed by a favorable decision." *Lujan*, 504 U.S. at 560–61 (cleaned up). In situations, as here, where a plaintiff's asserted injury arises from "the government's allegedly unlawful regulation (or lack of regulation) of *someone else*," it is more difficult for CLC to meet the injury-in-fact requirement, "for in such cases one or more of the essential elements of standing depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict." *Common Cause*, 108 F.3d at 417 (cleaned up). A "deficiency on any one of the three prongs suffices to defeat standing." *U.S. Ecology, Inc. v. U.S. Dep't of Interior*, 231 F.3d 20, 24 (D.C. Cir. 2000).

It appears—although it is hard to tell from the allegations contained in CLC's complaint— that CLC is relying on FECA's statutory scheme as proof that it has Article III standing. That theory was tried—and rejected—in *Common Cause*. Under that theory, FECA provides that "[a]ny person" who believes that a violation of the Act has occurred "may file a complaint with the Commission" (§ 30109(a)(1)). Thereafter, "[a]ny party aggrieved by an order of the Commission dismissing a complaint filed by such party … or by a failure of the Commission to act on such complaint" may seek judicial review in this Court, which may declare the dismissal or failure to act to be "contrary to law" (§§ 30109(a)(8)(A), 30109(a)(8)(C)). Common Cause had argued that "these provisions embody 'a statutory promise to the complainant that the FEC will act on a complaint in a reasonable period of time and will do so in a manner not contrary to law.'" 108 F.3d at 418 (cleaned up). It argued, when FEC violates the complainant's "right to a prompt and lawful resolution of the complaint, the

Commission 'deprives the complainant of a statutorily promised benefit that is personal to the complainant.'" *Id.* The D.C. Circuit rejected Common Cause's theory of standing outright.

Indeed, the Supreme Court has rejected the theory that a plaintiff can bootstrap Article III standing by holding on to statutory galoshes. Common Cause's injury, the D.C. Circuit said, "parallels the 'procedural injury' the Supreme Court held insufficient in *Lujan*." *Id.* (cleaned up). The citizen-suit provision that *Lujan* evaluated provided that "any person [could] commence a civil suit on his own behalf … to enjoin any person, including the United States and any other governmental … agency … who is alleged to be in violation of any provision of this chapter." 16 U.S.C. § 1540(g). *Lujan* concluded that this provision could not satisfy Article III's injury-in-fact requirement in cases where an individual was otherwise unable "to allege any discrete injury flowing from" the alleged violation of the relevant statute. 504 U.S. at 572.

Nor can CLC assert injury-in-fact merely by alleging that "a violation of the law has occurred." *Common Cause*, 108 F.3d at 418; *see generally* Compl. (alleging that 45Committee, Inc. violated FECA by failing to register as a political committee and failing to file reports disclosing its contributors, expenditures, or debts and obligations). That would be "tantamount to recognizing a justiciable interest in the enforcement of the law"—something the Court cannot do. *Common Cause*, 108 F.3d at 418. "Congress cannot, consistent with Article III, create standing by conferring 'upon *all* persons … an abstract, self-contained, noninstrumental 'right' to have the Executive observe the procedures required by law.'" *Id.* (quoting *Lujan*, 504 U.S. at 573) (emphasis in original).

CLC could, conceivably, present an informational-standing argument. *See, e.g.*, *FEC v. Akins*, 524 U.S. 11 (1998). That argument, however, is too hypothetical, conjectural, and speculative to confer Article III standing on CLC. In an *Akins*-style standing argument, "the nature of the information allegedly withheld is critical to the standing analysis." *Common Cause*, 108 F.3d at 417. With respect to a FECA claim, an injury is deemed sufficiently concrete only if the disclosure sought "is related to [CLC's] informed participation in the political process." *Nader v. FEC*, 725 F.3d 226, 230 (D.C. Cir. 2013). A plaintiff does not suffer an adequate informational injury if its demand is for FEC to "'get the bad guys,' rather than disclose information." *Common Cause*, 108 F.3d at 418. *See also Free Speech for*

8

*People v. FEC*, __ F. Supp. 3d __, 2020 WL 999205 (D.D.C. Mar. 2, 2020) (informational injury is not sufficient to establish standing); *Wertheimer v. FEC*, 268 F.3d 1070, 1074–75 (D.C. Cir. 2001) (plaintiff lacked standing because it did "not really seek additional facts but only the legal determination that certain transactions constitute coordinated expenditures").

*Common Cause*, and other cases applying it and *Lujan*, have firmly rejected the argument that FECA's statutory scheme confers Article III standing to bring Section 30109(a)(8)(A) suits. 108 F.3d at 418–19. *Amicus* simply urges this Court to follow that direct, binding, appellate precedent. CLC has not alleged a single fact in its complaint to demonstrate that it has Article III standing. A bare assertion of an interest in ensuring that federal law is not violated does not suffice. *See also Citizens for Responsibility & Ethics in Washington v. FEC*, 799 F. Supp. 2d 78, 85 (D.D.C. 2011) ("Having the right to file an administrative complaint with the FEC does not necessarily give Plaintiffs standing to seek judicial review of the disposition of that complaint in this Court."); *Judicial Watch, Inc. v. FEC*, 180 F.3d 277 (D.C. Cir. 1999) (stating that plaintiff's "standing to sue … must be based upon an injury *stemming from*" FEC's action or inaction (emphasis added)).

When a plaintiff lacks standing, the appropriate action for the court to take is to dismiss the case for lack of subject-matter jurisdiction. *Steel Co.*, 523 U.S. at 92–93. That is what the Court should do here.

## II.    FRCP 55 DOES NOT ABSOLVE THE COURT OF ITS OBLIGATION TO DETERMINE WHETHER THE PLAINTIFF HAS STANDING

Granting or denying a motion for default judgment is a matter within the court's discretion. *Int'l Painters & Allied Trades Industry Pension Fund v. Auxier Drywall, LLC*, 531 F. Supp. 2d 56, 57 (D.D.C. 2008) (citing *Jackson v. Beech*, 636 F.2d 831, 836 (D.C. Cir. 1980)); *Pulliam v. Pulliam*, 478 F.2d 935, 936 (D.C. Cir. 1973) (same). FRCP 55 contains a strong presumption disfavoring default judgments against federal agencies like FEC. *See* FRCP 55(d) ("A default judgment may be entered against the United States, its officers or its agencies *only if* the claimant establishes a claim or right to relief by evidence that satisfies the court." (emphasis added)).

In addition, major treatises on federal practice and procedure, as well as several circuits, have set forth factors that district courts should consider before deciding whether to enter default judgments under FRCP 55. *See* 10A Wright & Miller, Federal Practice & Procedure § 2685 (4th ed. 2020) (giving eight non-exhaustive factors); 6 James Wm. Moore, *et al.*, Moore's Federal Practice § 55-20[2][b] (3d ed. 1999) (giving seven non-exhaustive factors); *Hill v. Williamsport Police Dept.*, 69 Fed. Appx. 49, 51–52 (3d Cir. 2003) (giving three factors; quoting *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000)); *Russell v. City of Farmington Hills*, 34 Fed. Appx. 196, 198 (6th Cir. 2002) (giving seven factors); *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986) (giving seven non-exhaustive factors; citing Moore's Federal Practice, *supra*). To *amicus*'s knowledge, there is no D.C. Circuit case on point. However, *amicus* assumes this Court would be skeptical of departing from the established rule in every circuit that has decided this question at the appellate level. At bottom, of the several factors these cases discuss, one factor is salient above all others: whether the plaintiff has Article III standing.

When asked to enter default judgments, federal courts across the country routinely have first assured themselves that the plaintiff has Article III standing, and if such standing is lacking, have declined to enter default judgments for want of subject-matter jurisdiction. *See, e.g.*, *U.S. Bank v. IRS*, No. 12-cv-78-M-DWM, 2013 WL 788079, at *3 (D. Mont. Mar. 1, 2013); *Freemyer v. Kyrene Village II, LLC*, No. 10-cv-1506-PHX-GMS, 2011 WL 42681, at *3–4 (D. Ariz. Jan. 6, 2011); *Berthiaume v. Doremus*, 998 F. Supp. 2d 465, 470–474 (W.D. Va. 2014); *Diaz v. Green Tree Servicing, LLC*, No. C15-359RSL, 2015 WL 3451278, at *3–10 (W.D. Wash. May 29, 2015).

This Court should follow the rule of decision given in these and other cases collected in the aforementioned treatises and decline to enter default against FEC. Not performing this default-judgment analysis would raise serious constitutional concerns regarding the legitimacy of federal-court judgments. Federal courts have no power to waive, suspend, or absolve the claimant or itself from ensuring, that the Article III case-or-controversy requirement is met in each case. Otherwise, the Court would be using a rule of civil procedure to override the Constitution's Article III.

A plaintiff's obligation to meet Article III's case-or-controversy test is an immovable feature of our constitutional structure. It is a "bedrock requirement" and an "irreducible minimum" without

which courts have no power other than to dismiss cases for lack of subject-matter jurisdiction. *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 471, 472 (1982). *See also Summers v. Earth Island Inst.*, 555 U.S. 488, 492–93 (2009) (the case-or-controversy requirement is a "fundamental limitation" and "is founded in concern about the proper—and properly limited—role of courts in a democratic society" (cleaned up)). Article III standing is a "jurisdictional requirement that cannot be waived by the parties." *Cherry v. FCC*, 641 F.3d 494, 497 (D.C. Cir. 2011). Federal courts must analyze whether the plaintiff has standing even where, as here, adversarial presentation on the question by the defendant is lacking—because standing cannot be "waived or conceded." *Animal Legal Defense Fund, Inc. v. Espy*, 29 F.3d 720, 723 n.2 (D.C. Cir. 1994).

## III.   CLC'S CLAIMED INJURY IS NOT CONSTITUTIONALLY REDRESSABLE

This Court can neither revisit *Marbury v. Madison*, 5 U.S. 137 (1803), nor *Humphrey's Executor*. But entering default judgment favoring CLC, or otherwise ordering FEC to process CLC's administrative complaint against 45Committee, Inc. would require this Court to either ignore *Marbury* or sidestep *Humphrey's Executor*. Given these equally undesirable options, *amicus*, instead, offers a third: dismiss the case without prejudice for want of subject-matter jurisdiction because the case is not justiciable and CLC's claimed injury (even assuming CLC can show injury-in-fact) is not redressable by a federal-court decision favorable to it.

### A.   Federal Courts Cannot Order Executive Officials to Perform Discretionary Acts

In addition to lacking injury-in-fact, this case is also nonjusticiable because the apparent harm is not redressable by federal courts. Federal courts cannot constitutionally order an executive agency to exercise its prosecutorial discretion. That rule is as old as *Marbury v. Madison*. "[A]n agency's decision not to prosecute or enforce, whether through civil or criminal process, is a decision generally committed to an agency's absolute discretion." *Heckler v. Chaney*, 470 U.S. 821, 831 (1985). Decisions regarding whether and whom to investigate "are all made outside the supervision of the court." *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 807 (1987). Making decisions to investigate or prosecute are a "core executive constitutional function." *United States v. Armstrong*, 517 U.S. 456, 465 (1996).

In *Marbury v. Madison*, Chief Justice Marshall, writing for the Court, concluded that federal courts cannot order executive officials to do discretionary acts; federal courts can only order executive officials to do ministerial acts. Here, the practical effect of ordering FEC to process CLC's complaint against 45Committee, Inc. would be to order FEC to act on a matter that is inherently discretionary. If that act were ministerial, FECA would not have required four affirmative votes of the commissioners to make the reason-to-believe determination.

> It is not by the office of the person to whom the writ is directed, but the nature of the thing to be done that the propriety or impropriety of issuing a mandamus, is to be determined. Where the head of a department acts in a case, in which executive discretion is to be exercised; in which he is the mere organ of executive will; it is again repeated, that any application of a court to control, in any respect, his conduct, would be rejected without hesitation.

*Marbury v. Madison*, 5 U.S. at 170–171. An unbroken line of authority since 1803 says that courts can order executive officials to act "'only where the duty to be performed is ministerial and the obligation to act peremptory, and plainly defined. The law must not only authorize the demanded action, but require it; the duty must be clear and indisputable.'" *National Treasury Employees Union v. Nixon*, 492 F.2d 587, 602 (D.C. Cir. 1974) (quoting *United States ex rel. McLennan v. Wilbur*, 283 U.S. 414, 420 (1931)); *see also Weeks v. Goltra*, 7 F.2d 838, 847 (8th Cir. 1925) ("[T]here [is] a distinction between acts involving the exercise of judgment or discretion and those which are purely ministerial; that, with respect to the former, there exists, and can exist, no power to control the executive discretion, however erroneous its exercise may seem to have been, but, with respect to ministerial duties, an act or refusal to act is, or may become, the subject of review by the courts.").

FECA directs FEC, via § 30109(a)(2), that upon receiving an administrative complaint, such as CLC's against 45Committee, Inc., to "determin[e], by an affirmative vote of 4 of its members, that it has reason to believe that a person has committed, or is about to commit, a violation of this Act or chapter 95 or chapter 96 of Title 26." FEC "shall make an investigation of such alleged violation" only upon receiving four affirmative votes of FEC commissioners. *Id.* Neither the reason-to-believe determination nor the investigation that follows is a ministerial act. The obligation to act is inherently *not*

peremptory. The statute leaves FEC commissioners and FEC investigators wide room for denial, refusal, discussion, debate. The statute also leaves to FEC's discretion how much time it will take to make that determination, if at all. The only portion of § 30109(a)(2) that can be viewed as ministerial is the requirement that FEC's "chairman or vice chairman" "shall … notify the [respondent (like 45Committee, Inc.)] of the alleged violation" and the "factual basis for such alleged violation" after FEC makes the reason-to-believe determination. The rest of that section is patently non-ministerial. The remedy CLC seeks is, therefore, not redressable.

From a different perspective, consider also the practical effect of declaring that FEC's "failure to act is contrary to law" (§ 30109(a)(8)(C)). If the "act"—deciding by four affirmative votes whether there is reason to believe that a FECA violation occurred—is discretionary, how can the failure to perform that act ever be "contrary to law"? The redress CLC seeks does not logically follow. Such redress would also be unconstitutional.

The analysis might look different, say, if CLC had brought this case to this Court at one of the later tiers of FEC's multi-tiered complaint-adjudication process. If FEC had already determined by four affirmative votes that there was reason to believe that a FECA violation occurred (§ 30109(a)(2)), or already determined, after investigating and full briefing, that there was "probable cause to believe" that a FECA violation occurred (§ 30109(a)(4)(A)(i)), FEC's failure to act *after* such determinations could perhaps be declared "contrary to law" and the Court could perhaps order FEC to "conform" to such a declaration (§ 30109(a)(8)). The bulk of FECA's remedial scheme may well pass constitutional muster because the failure to act in those contexts means that FEC has already decided culpability but has failed to order remedies that FECA provides, such as disclosure of information or monetary penalties (§§ 30109(a)(4), (a)(5)). Another possibility: wrongful investigation or prosecution could be actionable by respondents like 45Committee, Inc. These several options only show that at an early stage, as here, where FEC has not even made the reason-to-believe determination, FEC cannot be constitutionally ordered by a federal court to take that discretionary action in either the complaint-dismissal or the failure-to-act context—not without disregarding *Marbury v. Madison*.

**B.    CLC Cannot Constitutionally Transfer an Independent Agency's Executive Functions to the Federal Courts**

Entering a Rule 55 default judgment against FEC is also problematic because of the usual rule that upon entry of default, the factual allegations of the complaint, save those concerning monetary damages, are deemed to have been admitted by the defaulting party. *See* FRCP 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."); 10A Wright & Miller, Federal Practice & Procedure § 2688. CLC's allegation here is that FEC unreasonably delayed deciding whether there is "reason to believe" that 45Committee, Inc. "has committed, or is about to commit, a violation of" FECA (§ 30109(a)(2)). *See* Compl. at ¶ 1. Once the default is established, "the defendant has no further standing to contest the factual allegations of the plaintiff's claim for relief." 10A Wright & Miller, Federal Practice & Procedure § 2688.1. Entering default means that this Court would have to determine in the first instance whether there is reason to believe a FECA violation factually occurred. Entering default in this case would transfer to the judiciary FEC's executive and inherent prosecutorial discretion in deciding whether there was reason to believe a violation of FECA occurred, and thereby commence an investigation against 45Committee, Inc.

CLC filed its administrative complaint against 45Committee, Inc. on August 23, 2018. Compl. at ¶ 2. In August 2018, FEC was composed of four commissioners—the current three commissioners, plus Matthew S. Petersen,[4] who resigned a full year later, effective August 31, 2019.[5] CLC could have brought this action as early as January of 2019 under the 120-day-inaction rule of § 30109(a)(8)(A) at a time when FEC had still not lost its quorum. Yet, it admittedly, but without explanation, waited *575 days* to file suit—in an election year when FEC lacked a quorum. *See* Compl. at 2.

---

[4]     *See FEC Leadership & Structure, All Commissioners*, FEC https://www.fec.gov/about/leadership-and-structure/commissioners/ (last visited May 20, 2020).
[5]     *See* Letter from Matthew S. Petersen, FEC Commissioner to President Donald J. Trump (Aug. 26, 2019), *available at* https://www.fec.gov/resources/cms-content/documents/Vice_Chairman_Petersen_LOR_8.26.19.pdf.

Even if one were to discount such gamesmanship, CLC's federal case fares no better. Congress created a six-member commission, not an odd-numbered one, with full knowledge—or perhaps, expectation—of deadlock. Congress required that not more than three commissioners may be of the same political party (§ 30106(a)(1)). It then required four affirmative votes—*i.e.*, bipartisan consensus—for FEC to take the two actions relevant here (the reason-to-believe and defend-federal-suit determinations). CLC now wishes to undo that carefully and deliberately crafted statutory scheme by asking a single Article III judge, in effect, to cast the four votes to make the reason-to-believe determination.

The standing inquiry, which includes the redressability prong, is "especially rigorous" when the dispute implicates, as it does here, the Constitution's separation of powers. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013). The "law of Article III standing … is built on separation-of-powers principles" and "serves to prevent the judicial process from being used to usurp the powers of the political branches." *Id.*

Even though CLC waited 575 days to file this federal suit, CLC is apparently now dissatisfied with FEC's delay in processing CLC's complaint against 45Committee, Inc. (caused by FEC's lack of a quorum). If that is so, the remedy it seeks does not redress that dissatisfaction.[6] Tellingly, CLC does not seek to, and this Court cannot force, the President and the Senate to fill FEC vacancies. The decision to fill vacancies or keep them vacant is an inherently political question. In Appointments Clause cases like *Humphrey's Executor*, federal courts have been asked to decide whether the appointment or removal of an executive official was constitutional; courts have not been asked to remedy a citizen-observer's dissatisfaction with either the President's or the Senate's keeping executive-branch vacancies unfilled. In other words, if the federal judiciary could step in and do an independent federal agency's job every time a well-intentioned but officious intermeddler like CLC were to so ask, awarding such redress would make multi-member independent agencies superfluous (Federal Trade

---

[6]     The delay may have already been remedied due to Mr. Trainor's confirmation by the Senate as the fourth FEC commissioner on May 19, 2020. It is unclear whether he has also been sworn into office. In any event, his swearing in should follow in short order.

Commission, Securities and Exchange Commission, National Labor Relations Board, etc.). There would be no need to have an independent agency like FEC to make a reason-to-believe determination if a federal court could make that executive decision instead. It would be much easier for complainants like CLC to convince one official instead of four. Although overruling *Humphrey's Executor* is not CLC's intent, the remedy it seeks from this Court would surely undermine the Constitution's separation of powers.

If, as CLC claims, FEC is unable to follow the law—so far due to the statutory quorum rules, and henceforth because of voting gridlock that is expected among the four commissioners—then perhaps the Executive would have the unwavering Article II duty to "take Care that the Laws be faithfully executed." U.S. CONST. art. II, § 3. If FEC is getting in the way of the Executive's take-care duty, then perhaps the situation is redressable by the political branches. Perhaps CLC could sue the President, along with, or in place of, suing FEC. Perhaps CLC's injury could be remedied by Congress—it could change the quorum rules and enact a simple-majority vote of sitting commissioners as opposed to the current four-vote rule. In any event, the answer cannot be that an Article III officer must arrogate to herself the job of an Article II officer.

By creating a six-member commission dealing with federal elections of which not more than three belong to the same political party, Congress anticipated frequent gridlock. It could not have contemplated that a single federal judge would stand in the shoes of and do the work of four FEC commissioners. The relief CLC seeks here defeats how the administrative state, specifically FEC, is supposed to work. In effect, therefore, this Court's decision in favor of CLC would be nothing more than an advisory opinion on an inherently political question.

At the very least, this discussion shows that entering a default judgment in this case is ill-advised. Just because FEC could eventually seek FRCP 60 relief from default judgment or take subsequent appeal to the D.C. Circuit and onward if needed does not counsel in favor of granting CLC's request for default judgment now.[7] The constitutional-avoidance principle would so dictate. "[A]ny

---

[7]    If ever there were a reason to enter default due to FEC's non-appearance, that reason has now evaporated. FEC, as of May 19, 2020, has four commissioners. All four may choose to defend this

doubts as to the propriety of a default are usually resolved against the party seeking a default judgment." *VonGrabe v. Sprint PCS*, 312 F. Supp. 2d 1313, 1319 (S.D. Cal. 2004) (citing *Pena v. Seguros La Comercial, S.A.*, 770 F.2d 811, 814 (9th Cir. 1985)).

The statutory remedy given in § 30109(a)(8)(C) and requested by CLC here is simply not one this Court can constitutionally award. In place of entering a Rule 55 default judgment, the Court should render a Rule 54 judgment dismissing the case without prejudice because the plaintiff has not shown injury-in-fact, nor that its claimed injury is redressable by federal courts. A Rule 55 default is currently not appealable by anyone. FEC is unable to defend itself and take such an appeal until the now four-member FEC takes a vote on that question and all four commissioners vote affirmatively. The real-party-in-interest (45Committee, Inc.) is not a named defendant and cannot appeal at present. CLC, because a default judgment would be in its favor, is not an aggrieved party for purposes of taking an appeal. But CLC could immediately appeal a Rule 54 judgment against CLC. The D.C. Circuit and the Supreme Court, if needed, would then be well-positioned to weigh in on these weighty constitutional issues.

## CONCLUSION

This case is of utmost importance because the Court is asked to decide whether it is constitutionally permissible to transfer, at the request of private parties, executive power and prosecutorial discretion to the federal courts. The Court should not enter a FRCP 55 default judgment against FEC. Instead, it should dismiss the case without prejudice because the plaintiff lacks standing, and its claimed injury is and will remain not redressable.

Respectfully submitted, on May 22nd, 2020.

/s/ Kara Rollins
Kara Rollins (D.C. Bar No. 1046799)
Jessica Thompson (D.C. Bar No. 1542170)
New Civil Liberties Alliance
1225 19th St. NW, Suite 450
Washington, DC 20036

---

suit, but *amicus* would still recommend dismissal because the injury-in-fact and redressability analysis presented in this brief would not change.

(202) 869-5210
Kara.Rollins@NCLA.legal
Jessica.Thompson@NCLA.legal

*Attorneys for Amicus Curiae*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that the filing complies with the Local Civil Rules relating to formatting and page limits, being double-spaced and prepared in 12-point proportionally-spaced font including in the footnotes pursuant to L. Civ. R 5.1(d), and not exceeding the allotted 25-page limit of L. Civ. R. 7(o)(4).

/s/ Kara Rollins
Kara Rollins
Jessica Thompson

19

**CERTIFICATE OF SERVICE**

I hereby certify that on May 22, 2020, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and distribution to all registered participants of the CM/ECF System. Attorneys for Plaintiff are registered users of the CM/ECF System of this Court. Defendant was served a paper copy of this filing via regular United States mail at its address:

Federal Election Commission
1050 First Street NE
Washington, DC 20463

/s/ Kara Rollina
Kara Rollins
Jessica Thompson